No. 33,792

THE STATE OF KANSAS, ex rel. ARCHIE T. MACDONALD, County Attorney of McPherson County, *Plaintiff*, v. ANTON PETERSON, as County Clerk, etc., et al., *Defendants.*

(78 P. 2d 60)

Opinion filed April 9, 1938.

*James A. Cassler, L. H. Ruppenthal* and *Archie T. MacDonald,* all of Mc-Pherson, for the plaintiff.

*D. C. Hill,* of Wamego, *Eli Eubanks, Vincent F. Hiebsch, Otto Souders,* all of Wichita, *C. L. Clark,* of Salina, and *Balfour Jeffrey,* of Topeka, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in mandamus. A motion to quash the writ was filed and the cause was set down for argument and has been submitted on the question of whether or not a peremptory writ should issue. The question in the case is the tax situs of intangible assets owned by certain corporations operating in McPherson county.

The action is brought in the name of the state by the county attorney of McPherson county. The county clerk of McPherson county and the county clerk of Saline county and the county assessor of Sedgwick county, the three corporations involved and the state tax commission are defendants.

After the necessary formal allegations as to the official status of the various officers and the organization of the corporate defendants the application for a writ states first that the Globe Oil and Refining Company is operating a manufactory for the purpose of refining crude petroleum in McPherson county, Kansas; that all the moneys, credits and intangibles of the company arise out of its business of refining crude petroleum at its plant in McPherson county; that the general office of the company is located at Wichita, in Sedgwick county, Kansas; that in June, 1936, the company filed its "personal property statement of merchants and manufacturers" for 1937 with the county clerk of McPherson county; that amongst other items in this statement was one item showing moneys and credits to be assessed in accordance with G. S. 1935, 79-3108, in the amount of $414,424.03.

The application for a writ then sets out correspondence between the company and certain defendants wherein it appears that the company desired to list those moneys and credits in McPherson county and the officials of McPherson county wanted them listed there but the tax commission contended that they should be listed in Sedgwick county; that following this correspondence the county as-

sessor of Sedgwick county listed this item for taxation in Sedgwick county and the county clerk of McPherson county listed it in Mc-Pherson county; that the company appealed to the board of county commissioners of McPherson county, sitting as a board of equalization; that the board did not grant any relief; that the company appealed to the state tax commission; that this commission held the tax situs of the item in question to be in Sedgwick county; that the plaintiff had demanded of the county clerk of McPherson county that he put this item on the tax rolls of McPherson county, but by reason of the order of the state tax commission just referred to this county clerk had refused to comply with this demand.

The second cause of action stated that the Dickey Refining Company was operating a refinery in McPherson county and maintained its general office at Wichita; that all the moneys and credits owned by this company arose out of its refinery business at McPherson; that the county clerk of McPherson county assessed moneys and credits of this company in the amount of $47,770 in McPherson county; that the county assessor of Sedgwick county placed this item on the rolls of Sedgwick county; that the company appealed to the board of county commissioners of McPherson county, sitting as a board of equalization; that this board denied any relief; that thereafter this company appealed the matter to the state tax commission; that this commission held the situs of the item in question for taxation to be Sedgwick county; that the plaintiff had made demand on the county clerk of McPherson county to place this item on the tax rolls of McPherson county, but that official refused to comply with the demand.

The third cause of action stated that the McPherson Gas Company operated a gas distribution system at McPherson, Kan.; that it was owned solely by the Kansas Power and Light Company; that it returned intangibles in the amount of $20,000; that the McPherson Gas Company became a part of the Kansas Power and Light Company and conducted its business under that name.

The application then set out some correspondence between the company and various officers, whereby it appears that the county clerk of McPherson county contended that the moneys and credits of the Kansas Power and Light Company arising from its distribution system in McPherson should be put on the tax rolls of McPherson county, and that the tax commission held that this item should be taxed in Saline county, where a division office of the company was

located; that the board of county commissioners of McPherson county appealed the matter to the state tax commission which upheld the action of the board of county commissioners; that plaintiff had demanded that the county clerk of McPherson county put the item on the tax rolls of McPherson, but on account of the matters just recited he had refused to do so.

The prayer was for a writ of mandamus against the county clerk of McPherson county and the state tax commission ordering them to put the items referred to on the tax rolls of McPherson county and ordering the county assessor of Sedgwick county and the county clerk of Saline county to strike the items from the tax rolls of their respective counties, and for interlocutory orders necessary to preserve the status.

An alternative writ was issued. The defendants filed a motion to quash this writ. This brings up the question of whether the application alleged facts sufficient to entitle plaintiff to the relief prayed for or any other question that could be raised by a general demurrer in an ordinary action.

It will be seen that the question is whether the intangibles of a company should be taxed in the county where the plant of the company is located or in the county where its home office is located. The county attorney of one of the interested counties has brought this action in the name of the state to get the question settled. He has made his own county clerk a party and also every other official and every company which has an interest in the question.

The first argument of defendants is that the county attorney of McPherson county has no authority to bring this action in the name of the state. Defendants rely on G. S. 1935, 75-702. That section provides, in part, as follows:

"The attorney general shall appear for the state and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party. . . ."

Defendants argue that under the provisions of this statute the attorney general is the only officer vested with the power to bring an action in which the state as a whole is interested. *Martin, Governor, v. The State, ex rel.,* 39 Kan. 576, 18 Pac. 472, is cited by defendants on this point. That was an action brought by the county attorney of Stevens county against the governor, involving the organization of Grant county. This court held that the county attorney of Stevens county had no right to institute the proceedings in the name

of the state in the district court of Shawnee county without the consent and against the objection of the attorney general. It should be noted that this action is not being prosecuted against the wishes of the attorney general. While the state tax commission is a party defendant, it appears that the commission has no interest in the outcome of the action other than to see that the rule finally followed by county clerks in matters of this kind should be uniform throughout the state. On the other hand, McPherson county does have a peculiar interest in the outcome of this action, since if these intangibles should be taxed in McPherson county rather than the other two counties the tax rate on tangible property in McPherson county will be appreciably lowered. The other county officials are made parties, but they are not necessary parties. It appears they were joined as defendants so that the proper interlocutory orders might be made. The question of whether it was the duty of the county clerk of McPherson county to put these intangibles on the tax rolls might have been settled by an action against the official. (See *State v. Railway Co.*, 81 Kan. 430, 105 Pac. 704.) It is better, however, for this court to have the benefit of the ideas of counsel for all parties. The important thing is that the disputed point in the operation of our intangible tax act should be settled rather than the form of the action. On this point we hold that what was said in *State, ex rel., v. Bradbury*, 123 Kan. 495, points out as the correct procedure that which was followed here. (See, also, *State, ex rel., v. Labette County*, 114 Kan. 726, 220 Pac. 275.)

For many years the operative interpretation of the various statutes conferring powers and imposing duties upon the county attorney has been to the effect that ordinarily whenever quo warranto or mandamus has been properly invocable at the instance of the state on the relation of the county attorney, this court has entertained such an action as readily when brought by the county attorney, on his compliance with G. S. 1935, 60-3826, rule 3, as if our original jurisdiction in a similar action had been invoked by a private litigant and his private lawyer. (See *State, ex rel., v. Wyandotte County Comm'rs*, 140 Kan. 744, 746, 747, 39 P. 2d 286.)

Defendants next argue that the state has no such interest in this action as will entitle it to maintain this action. What has just been said on the question considered above answers this argument.

Defendants next argue that it is improper to join so many causes of action. *State, ex rel., v. Comm'rs of Reno Co.*, 38 Kan. 317, 16 Pac. 337, is cited and relied upon. That was an action that involved

elections in the various townships of Reno county. This court held that each township was entitled to have its right to an election considered on its own merits.. The case is not in point here because, as has been said, the legal question involved here could have been settled by a suit against the county clerk of McPherson county. This court has broadened the use to which the ancient writ of mandamus may be put, to the end that there may be a speedy adjudication of legal questions and an orderly administration of the public's business. (See *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563; also, *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 295 Pac. 987.)

Defendants next argue that the alternative writ fails to show on its face that the plaintiff is entitled to any relief as directed. The point made is that only a copy of the alternative writ was served. The statute does provide the original writ should have been served rather than a copy, as is the case with a summons. As we have said, however, the important matter is the settlement of the law question. We will not permit a matter of whether the original or a copy of a writ was served to prevent us from settling it. Every once in a while we set an application for a writ down for hearing without issuing any alternative writ at all—just hear the parties on the application for a writ.

Defendants next argue that the alternative writ shows upon its face that the plaintiff is not entitled to a peremptory writ. This argument is based upon the fact that the home office of one of the two companies is shown to be in Wichita and of the other in Salina. They point out that G. S. 1935, 79-304, provides as follows:

". . . all personal property shall be listed and taxed each year in the township, school district or city in which the property was located on the first day of March, but all moneys and credits not pertaining to a business located shall be listed in the township or city in which the owner resided on the first day of March. The property of banks . . . or other companies . . . shall be listed and taxed in the county, township, city and school district where their business is usually done."

Defendants argue that the general offices of these companies are their places of residence, and hence, under this statute, these intangibles should have been listed at the places of residence of these companies, that is, Wichita and Salina, respectively.

This argument is given considerable weight by the intangible tax act itself. This act provided a comprehensive plan for the listing of intangibles. G. S. 1935, 79-3112, provides as to who shall list intangibles. Among other provisions is the following:

"*Provided, however,* That money, notes and other evidence of debt collected or received by any agent or representative of any person, company, or corporation, which is to be transmitted immediately to such person, company or corporation, shall not be listed, but such agent or representative shall, upon request, state under oath the amount of such money or credits then in his hand and to whom the same is to be transmitted."

The legislature has the authority to fix the place where property shall be taxed. (See *Freedom Township v. Douglas,* 99 Kan. 176, 160 Pac. 1147.) The above provision of the statute was intended to cover a situation such as the one we are considering. The employees who collect the funds for the company at McPherson are the agents of the company. The residence of the company is the county where the home office is located. These intangibles are collected at the plants in McPherson. If they are sent immediately to the home office of the companies then the items should be listed by the proper officers of the companies at the home offices, as provided in G. S. 1935, 79-3111. Our inquiry then is whether the item of intangibles with which we are dealing was to be sent immediately to the home office in each case.

In considering this question we will assume that funds transmitted to the home office within a reasonable time in the regular course of business are sent immediately in accordance with the requirement of the statute.

After this case was submitted this court suggested that the parties agree as to the manner in which the business of the companies is carried on. This has been done and statement of facts filed. As to the Globe Oil and Refining Company, the parties have agreed that money is collected at the refinery for the products sold, and deposited in local banks; that the Wichita office of the company draws upon the banks for this money from time to time; that the company keeps $1,000 on deposit in each of the McPherson banks at all times. Such a plan, we have concluded, is the sort of a transaction contemplated by the above section. It follows that the $1,000 kept in each of the McPherson banks should be placed on the tax rolls of McPherson county while the balance of the intangibles reported should be placed on the tax rolls of Sedgwick county. The same situation exists as to the handling of the business of the Dickey Refining Company, except that according to the statement of facts agreed upon, from $500 to $800 is kept on deposit in the McPherson banks. This is a detail that can be adjusted when the company makes the return, since there is no question here as to the details of the return

made. As to the Kansas Power and Light Company, the business is handled in about the same way. In the case of that company $2,200 is kept on deposit in the McPherson banks.

Since this action is in the nature of one for declaratory judgment this court holds that the intangibles of these companies should be placed on the tax rolls of the counties interested in accordance with the views herein expressed, that is, the funds deposited in the Mc-Pherson banks and transmitted from time to time to the home offices of these companies should be placed on the tax rolls of the counties where the various home offices are located, while those kept on deposit at all times in the McPherson banks should be placed on the tax rolls of that county.

The peremptory writ as prayed for is denied.