CITY OF DALLAS V. TEXAS PRUDENTIAL INSURANCE COMPANY

No. A-5523. Decided June 20, 1956.
Rehearing overruled July 11, 1956.
(291 S.W. 2d Series 693)

*H. P. Kucera, R. A. McBean* and *Ted P. MacMaster,* all of Dallas for petitioner.

The Court of Civil Appeals erred in holding that the furniture and fixtures had their taxable situs in the City of Galveston and that the trial court erred in holding that Article 3.15 does not apply to fixing the situs of the company personal property in Galveston County for tax purposes. Ferris v. Kimble, 75 Texas 476, 12 S.W. 689; Great Southern Life Ins. Co. v. City of Austin, 243 S.W. 778; Guaranty Life Ins. Co. v. City of Austin, 108 Texas 209, 190 S.W. 189.

*Thompson, Knight, Wright & Simmons, Pinkney Grissom* and *David M. Kendall, Jr.,* all of Dallas, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

Petitioner, City of Dallas, filed this suit against respondent, Texas Prudential Insurance Company, to recover personal property taxes levied upon the furniture and fixtures kept by respondent in its branch office in the City of Dallas. Respondent is a domestic life insurance company with its principal office and place of business in the City of Galveston, Galveston County, Texas. For convenience the parties will hereafter be designated as the "City" and the "Company."

The City presented five principal contentions in the trial court that (1) the sentence contained in Article 3.15, Vernon's Annotated Civil Statutes of Texas, which reads, "* * * For the purpose of state, county, and municipal taxation, the situs of all personal property belonging to such companies shall be at the home office of such company" was not applicable to the tangible property involved in this suit, but is only applicable to intangible personal property, and more specifically to securities owned by a domestic life insurance company. The City contends that the Legislature meant intangible property because all of the Article except the quoted sentence dealt with the right of a domestic life insurance company to deposit with the Treasurer of this State, at its option, securities (intangible) in which its capital stock has been invested, etc.; (2) the City took the position that if it should be held that the above quoted provision of Article 3.15, supra, was meant by the Legislature to apply to all personal property, then such provision was unconstitutional as being violative of Sections 1 and 11 of Article 8 and Section 5 of Article 11 of the Constitution of the State of Texas; (3) the City further contended that if Article 3.15 was applicable to all personal property, it was violative of Article 1177, Vernon's Annotated Civil Statutes; and (4) was violative of Chapter XII, Section 181 of the Charter of the City of Dallas; (5) that the Company was estopped to deny that the taxable situs of the property involved in this suit was in Dallas County, and was estopped to deny that the taxes were legally and lawfully assessed and levied as claimed by the City in its petition because the Company for certain years had rendered the property in Dallas, Texas.

The Company assumed the position that under the provisions of Article 4739 of the Revised Civil Statutes of the State of Texas, now Article 3.15 of the Insurance Code of 1951, the taxable situs of the personal property involved was at its home office in Galveston, Galveston County, Texas, and the City was

without authority or power to levy and assess taxes on such property. The Company further contends that the Act under consideration is not unconstitutional.

In a trial of this suit before the court without a jury, the court held that the statute did not apply to furniture and fixtures (tangible property) and, in the alternative, if it did apply it was unconstitutional. Judgment, therefore, was rendered for the City and against the Company for the amount of the taxes, plus penalties and interest. The Court of Civil Appeals at Waco held that the statute did apply and that, under prior decisions of the Court, the statute was constitutional. The judgment of the trial court was accordingly reversed and judgment was rendered that the City of Dallas take nothing. 282 S.W. 2d 723.

This Court is particularly concerned with these questions: 1. Did the makers of the Constitution by adopting Article 8, Section 11 wherein it is provided that "all property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county *where situated * * *"* (emphasis added) intend to deprive the Legislature of the power to fix the situs of *all personal property at the domicile of its owners?* 2. If the Legislature has the power to fix the situs of all personal property at the domicile of its owner, then, by enacting Article 3.15 was it intended to restrict the meaning of the words "all personal property" to include only intangible personal property? 3. Is the Company estopped to deny that the situs of its furniture and fixtures is in Dallas, Dallas County, Texas, because of the fact that for certain years the property was rendered for taxation in that city and county?

We shall first consider the questions involving the applicability and constitutionality of Article 3.15. We are of the opinion that the Act is constitutional and that the Legislature meant to provide and did provide that the taxable situs of all personal property, tangible and intangible, should be at the home office of the company. On the question of constitutionality of the Act we have concluded that the provision of Section 11, Article 8 of the State Constitution to the effect that all property shall be assessed for taxation in the county "where situated" was not intended to repeal or modify and does not repeal or modify any of the then existing rules defining where personal property shall be regarded as being situated for the purpose of taxation. The Constitution of Texas does not define the term "where situated." The words "where situated" used in the Constitution have a legal meaning identical with the word

"situs," a legal term having a well defined and established meaning at the time the Constitution was framed. The constitutional provision simply means that property shall be taxed where it has its situs. It is our opinion that the language "where situated," as used in the Constitution, does not, by its own force, determine the situs of personal property to be where it is physically located. If the language of the Constitution under consideration does thus determine situs, unaided by legislative effort or the common law, then there would be no authority in any case for disregarding the actual physical presence of personal property within a taxing district. In other words, if we held that the Constitution, by its own force, fixes the situs of the personal property involved in this suit to be in Dallas, Texas, because of its physical presence in that city, notwithstanding the declaration of the Legislature that its taxable situs shall be in the city of the Company's domicile, then there would be no authority for looking to the declarations of the Legislature or the common law in any cause to determine the situs of tangible or intangible personal property. The petitioner argues that the rule announced in the case of Great Southern Life Ins. Co. v. City of Austin, 112 Texas 1, 243 S.W. 778, 785, does not apply to the case at bar because in that case intangible property only was involved; whereas, tangible personal property is involved in the present case. On the question of the power of the Legislature to fix the taxable situs of intangible property the court, in the Great Southern case, supra, said, in part:

"Having determined that the Constitution did not of itself fix any definite situs for the taxation of intangible property, but left such situs to be determined under the rules of common law as then understood, and having determined that the Legislature had authority to fix the situs of such property at the domicile of the owner, it necessarily follows that section 38, chapter 108, General Laws of the 31st Legislature, fixing the taxable situs of the personal property referred to therein at the domicile of the companies named, is constitutional and must be upheld."

If the Legislature had the authority to fix the taxable situs of intangible property at the domicile of the owner, then under the same reasoning the Legislature had the authority to fix the situs of tangible personal property at the domicile of the owner. This for the reason that the Constitution did not fix the situs of tangible personal property to be where physically located any more so than it did intangible property. The Great Southern case involved the construction of the same statute as we have

under consideration in the case at bar. The court simply applied the general rule to the specific facts of that case. The rule there announced was, in effect, that the Constitution fixed the taxable situs of property according as the same was fixed at common law, and that the Legislature was thus empowered to fix the taxable situs of personal property, tangible and intangible either where it was physically located or at the domicile of the owner. Believing that the rule announced in the Great Southern case, supra, is applicable to the case at bar we feel impelled to follow that rule. The Legislature has, by Article 4.01, Texas Insurance Code 1951, Vernon's Annotated Civil Statutes, made separate provision for the taxable situs of personal property of fire and casualty companies and the different situs there fixed emphasizes that the taxable situs of all personal property of life insurance companies had been fixed in Article 3.15.

Controlling here also is the case of Gulf, C. & S. F. Ry Co. v. City of Dallas, Tex. Com. App., 1929, 16 S.W. 2d 292, 293, which was a suit brought by the City of Dallas against the Railroad to recover ad valorem taxes, together with interest and penalties thereon, alleged to have been due for certain years which were assessed against four of its switch engines maintained in the City of Dallas for switching purposes. The City of Dallas in that case claimed the right to assess and collect taxes against the Railroad's switch engines (tangible property) under the authority of Article 8, Section 5, State Constitution, which provides in part that " 'all property of railroad companies, of whatever description, lying or being within the limits of any city or incorporated town within this State, shall bear its proportionate share of municipal taxation; * * * and the authorities of the city or town within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon. * * *' " The court denied the contention of the city, and after quoting at length from the Great Southern case, supra, applied the principle of law announced in that case and specifically held that the construction given Article 8, Section 11 of the Constitution in the Great Southern case which involved intangible property was applicable to Article 8, Section 5. The court went on to hold that the expressions "where situated" and "lying and being within" are clearly synonymous, and continued:

"* * * It therefore follows that the Legislature has plenary power to determine the situs for purpose of municipal taxation of rolling stock belonging to railroad corporations. * * *"

For cases in other jurisdictions upholding the doctrine that the Legislature may fix the situs of personal property for purpose of taxation, see: Hall v. City of Fayetteville, 115 N.C. 281, 20 S.E. 373 (1894) ; Union Tanning Company v. Commonwealth, 123 Va. 610, 96 S.E. 780 (1918) ; Commonwealth v. Sun Life Assur. Company, 294 Ky. 19, 170 S.W. 2d 890 (1943) ; Kendrick v. Twin Lakes Reservoir Company, 58 Colo. 281, 144 Pac. 884 (1914) ; Freedom Township v. Douglas, 99 Kan. 176, 160 Pac. 1147 (1916) ; State v. Peterson, 147 Kan. 626, 78 Pac. 2d 60 (1938) ; Planters' Bank & Trust Company v. Town of Lumberton, 179 N.C. 409, 102 S.E. 629 (1920) ; Crane Company v. City Council of City of Des Moines, 208 Iowa 164, 225 N.W. 344 (1929), 76 A.L.R. 801; General Motors Acceptance Corporation v. Hulburt, 190 Okl. 568, 125 Pac. 2d 975 (1942), appeal dismissed, 317 U.S. 590, 87 L. Ed. 483, 63 Sup. Ct. 56.

■ We adhere to the well settled rule that a law will not be declared unconstitutional unless it is clearly so. In this case we have no doubt as to the validity of the statute under consideration, and we are equally certain that the Legislature intended to and purposely provided that the taxable situs of all personal property, including the type of property involved in this suit, should be at the home office of the company. A consideration of the history of the Act with its positive provision that the taxable "situs of all personal property belonging to such companies shall be at the home office of such company," in conjunction with Article 3.16, which contains the identical provision, convinces us that the conclusion we have reached is correct. The City contends that in determining the intention of the Legislature in enacting the above quoted provision of Article 3.15, we must be guided by the nature of the property described in the other provisions of the Act and since the other provisions mention only intangible property, it should be held that the Legislature intended that the words "all personal property" should be restricted to mean "intangible property." With this we cannot agree. We must give effect to the positive and unambiguous language of the statute. The provision of Article 3.15 under consideration has been a part of the statute since 1909. See Acts of 1909, Chapter 108, page 204, Section 38, (Article 4739, R. C. S.). The purpose of the Act (1909) was:

"* * * to authorize the incorporation of life, accident and health insurance companies and defining same; * * * to regulate the business of such companies; to define the duties and powers of the Commissioner of Insurance and Banking * * *; defining the method of arriving at the value of personal property of

such companies for purpose of State, county and municipal taxation, and exempting such companies from an occupation or gross receipts tax; *to fix the situs of personal property of such companies for purpose of taxation;* to permit the deposit of securities in the office of the State Treasurer; * * *." (Emphasis added).

It is evident by the enactment of Articles 3.15, 3.16 and 4.01, supra, that the Legislature intended that all personal property of a domestic life insurance company should be taxed according to a formula based on the difference between the total assets (excluding real estate) and the gross reserves on policies, and that the taxable situs of all personal property of every character and description should be at the home office of the company, and we so hold.

■ We turn now to the question of estoppel raised by the City. We overrule the point for the reason that on the trial of this case the City agreed in open court that the only issue in this case was the taxable situs of the personal property involved, "and further, that if the taxable situs of such personal property was and is in the City of Dallas, Texas, then plaintiff (City) is entitled to recover of defendant (Company) the amount of taxes plus penalty and interest sued for herein and that the same are due and unpaid." Since we have held the taxable situs of the personal property to be in Galveston, Galveston County, Texas, the home office of the Company, it naturally follows that the City should take nothing by virtue of its suit.

The judgment of the Court of Civil Appeals is affirmed.

ASSOCIATE JUSTICE MCCALL not sitting.

Opinion delivered June 20, 1956.

Rehearing overruled July 11, 1956.