

# THE ATTORNEY GENERAL
## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 6, 1965

Honorable W. E. Coats, Jr.
Criminal District Attorney
Smith County
Tyler, Texas

Opinion No. (C-432)

Re: Situs of U-Haul trailers
for the purpose of ad
valorem taxation, under
the stated facts.

Dear Mr. Coats:

In your letter you have requested an opinion from this office on the above subject. We quote pertinent paragraphs of your letter.

> "Rental trailers owned by the Arcoa Inc. of Portland, Oregon, commonly known as U-Haul Trailers are available for hire in most all counties of this state as well as other states. The principal place of business in Texas is Grand Prairie, Dallas County, Texas. In the course of business of renting these trailers, the trailers are rented in one county and may or may not be returned to the renting establishment in that county. The U-Haul Company is not involved in the dispute. They will pay their taxes. We are trying to determine to whom.

> "Dallas County authorities, Mr. Jerry D. Brownlow, City Attorney for Grand Prairie, Texas, relying on the enclosed opinion written by the Dallas County District Attorney's office, seeks to tax all U-Haul trailers located in the State of Texas and have the U-Haul Company pay all its ad valorem taxes to Dallas County.

> "This office and Smith County authorities seek to tax only the number of U-Haul trailers within Smith County, as of January 1, 1965, for the following reasons:

"(1)  The latter part of Article 7153 of
Vernon's Texas Civil Statutes does not cover
the situation in dispute because the trailers
are not 'temporarily removed' from the Dallas
County.  Many of the trailers or most of them
in Texas will never be in Dallas County and
even if the trailers were in Dallas County,
but are removed, they are not temporarily
removed from Dallas County, but are removed
with no prearranged plan for their return.

"(2)  The number of U-Haul Trailers
located in Smith County is almost constant.
Due to the nature of this business there must
always be present in Smith County a required
number of trailers to meet the business de-
mand.  So, even if one specific trailer does
not remain in Smith County so as to obtain a
'permanent status', a certain number of trailers
do remain here all the time.  City of Dallas v.
Overton, 363 S.W.2d 821 (error ref. n.r.e. 1962)."

The Constitutional provision providing for the taxation
of property is Article VIII, Section 11 of the Texas Consti-
tution.  It states:

"All property, whether owned by persons,
or corporations shall be assessed for taxation,
and the taxes paid in the county where situated,
. . ." (Emphasis supplied throughout.)

The phrase "where situated" has been interpreted by the
Texas Supreme Court to mean "where situated" under the common
law rule of "mobilia sequuntur personam" and not to mean
"where situated" physically or technically.  The court stated,
in Great Southern Life Insurance Company v. City of Austin,
112 Tex. 1, 243 S.W. 778 (1922):

"The Constitution was framed with refer-
ence to the common law, and in judging what the
Constitution means we should keep in mind that
it is not the beginning of the law of the state,
but that it assumes the existence of a well-under-
stood system, which was still to remain in force and
be demonstrated, and that the constitutional defini-
tions are in general drawn from the common law.

Hewitt v. State, 25 Tex. 722, 727; Gordon v. State, 43 Tex. 330, 340; Henderson v. Beaton, 52 Tex 29, 60; Ex parte King, 35 Tex. 658.

". . .

"Our Constitution, therefore, in declaring that property shall be taxed where situated, has done no more than declare the common-law rule.

". . .

"It did not define what was meant by the words where situated. Since it had reference to the taxing power, it evidently meant property where situated for the purposes of taxation under the general principles of law as then understood."

The court then reviewed the common law rule of "mobilia sequuntur personam" and stated:

"Under the common law, mobilia sequuntur personam was a well-established maxim, and personal property of every description was taxable only at the domicile of its owner, regardless of its actual location. This is still the basic principle upon which the taxation of personal property rests. 26 R.C.L. Section 241, pp. 273,274."

However, there are certain exceptions to the "mobilia sequuntur personam" rule and the Texas Courts have approved these exceptions. The Texas Supreme Court also stated in the Great Southern case, (supra) that:

"But even prior to the Revolution the principle 'mobilia sequuntur personam' had been abrogated to the extent that, as between different towns and taxing districts, certain classes of tangible personal property had a taxable situs where employed in business, regardless of the domicile of its owner." p. 781.

Honorable W. E. Coats, Jr., Page 4      Opinion No. (C-432)

A more recent decision reaffirming this exception is State v. Crown Central Petroleum Corporation, 242 S.W.2d 457 (Tex.Civ.App. 1951, err. ref.), wherein the Court ruled:

"One exception to the rule that tangible personal property is only taxable in the county of the residence of the owner is that tangible personal property, which by its character and concrete form is capable of having a value and an actual physical situs, may be taxed in the county where permanently located. State v. Fidelity & Deposit Co., of Maryland, 35 Tex.Civ.App. 214, 80 S.W. 544."

Also, in the case of the City of Dallas vs. Overton, 363 S.W.2d 821 (Tex.Civ.App. 1962, err. ref. n.r.e.), the Court wrote:

"Tangible personal property acquires tax situs in a jurisdiction apart from its owner if it is kept there with sufficient permanency that it may fairly be regarded as being a part of the general mass of property within the jurisdiction."

These exceptions have been recognized and propounded in the following cases and authorities: Galveston v. Haden, 214 S.W. 766 (Tex.Civ.App. 1919, no writ hist.); Logan v. Ludwig, 283 S.W. 548 (Tex.Civ.App. 1926, no writ hist.), Guaranty Life Insurance v. City of Austin 108 T. 209, 190 S.W. 189(1916); Cooley on Taxation, Vol. 2, 4th Edition, p. 975; Attorney General's Opinion Nos. V-373, O-5632, O-3702 and WW-818.

Thus, we see that there is much Texas authority for the proposition that tangible personal property which has acquired an actual situs of its own is to be taxed at the place of its situs and not at the domicile of its owner.

In your opinion request, you state that a certain number of trailers remain in Smith County at all times, which is tantamount to a certain number being assigned to Smith County, and that when the trailers are rented, they "may or may not" be returned to Smith County.

If all trailers which were rented in Smith County were returned to Smith County when the lessee had finished, then, unquestionably, all would be taxable in Smith County. Certainly, those trailers which are assigned to Smith County for business purposes, rented there and returned there, would be taxable there under the exception to the "mobilia sequuntur personam" rule as recognized by the Texas Courts.

The fact that all of the specific trailers do not return to Smith County does not preclude taxation by Smith County. That certain number which has been permanently assigned to Smith County by the corporation for business usage there, can and has attained a degree of permanency after that number has first been delivered to Smith County and after that number is shown to remain in Smith County for legitimate business purposes. Although trailers are large enough to be specifically identified, it should not be forgotten that they are also so similar as to be susceptible to treatment as fungible units, which is exactly how the corporation actually does treat them. Therefore, it is possible for taxation purposes, that even though certain specific trailers do not remain in or return to Smith County, that that certain number of trailers which have been permanently assigned to Smith County for legitimate business purposes and which have actually physically been in Smith County, have acquired an actual situs there. Thus, the U-Haul trailers are within the exception to the "mobilia sequuntur personam" rule and are taxable in Smith County.

A necessary element of this opinion is the determination that the trailers have acquired a degree of permanency in Smith County, thereby establishing their taxable situs there. In the City of Dallas v. Overton case, supra, the Court elaborated on the definition of "permanency";

"It is clear that 'permanency' as used in this connection does not convey the idea of the characteristics of the permanency of real estate. It merely involved the concept of being associated with the general mass of property in the state, as contrasted with the transient status--viz., likelihood of being in one state today and in another tomorrow. . . .

"Obviously the Courts do not construe the term 'permanent' to mean absolutely permanent, since movable property is seldom absolutely permanent. The question of whether or not the property in question is 'more or less permanent' as the term is often utilized, depends on the factual situation in each case as illustrated. . . ."

The facts, as you have given, reflect that a certain number of trailers are located within Smith County at all times by the corporation for business usage. That certain number which have actually, physically been located in Smith County must now be regarded as being a part of the general mass of the property within that jurisdiction, and in accordance with the previously cited authorities, must have consequently acquired a taxable situs in Smith County. There is no question but that some specific trailers are in a transient status at all times in that they are likely to be in Smith County today and in another county tomorrow. However, when the facts are considered as a whole, it must be remembered that those trailers which are removed from Smith County and are not returned have been or will be replaced by the company. Another factor for the determination that a certain number of trailers have become a general mass of the property within Smith County is the fact that that certain number of trailers will remain in Smith County when not in use. Smith County is their home base.

The fact that the Court, in the case of Fort Worth v. Southland Greyhound Lines, Inc., 123 Tex. 13, 67 S.W.2d 354 (Tex.Civ.App. 1931, opinion approved by Tex.Com. of App. on Certified Questions) refuted the average number theory does not conflict with our present determination, insofar as we are not advocating an average number rule but are averring that that certain number which has attained the necessary degree of "permanency" are taxable in Smith County.

The finding that items of personal property can acquire a tax situs away from the domicile of the owner, even though no specific items can be shown to have acquired a permanent

relation to the tax situs is not without authority.  The
United States Supreme Court held, in the case of Braniff
Airways, Inc. v. Nebraska Board of Equalization and Asses-
sment, 347 U.S. 590 (1954) that regularly scheduled flight
of airplanes, though not necessarily the same individual
planes, were sufficient to establish a taxable nexus for
the airplanes to acquire a tax situs in Nebraska.  The
principle was cited in Attorney General's Opinion No. WW-818
and was also implied from the fact situation as given in
Attorney General's Opinion V-373.  In V-373, the facts as
given were that Halliburton Oil Well Cementing Company
assigned two railroad cars to Hawkins, Texas, and that the
number of cars there at any given time would fluctuate ac-
cording to business needs.  Our office ruled that the LO
hopper cars were taxable in the city to which they had been
assigned because they had acquired a business situs there
for taxation purposes.

At first glance, several Texas cases, Chemical Express v.
Roscoe, 310 S.W. 694 (Tex.Civ.App. 1958, err. ref.) and Ft.
Worth v. Southland Greyhound, supra, might appear to be in
conflict with this opinion but careful study reveals other-
wise.

In the former case, the Court held that the trucks and
trailers of the corporation were not taxable in Roscoe even
though they were physically in that city on the taxable dates.
The Court's opinion is predicated upon the fact that no parti-
cular number of vehicles were assigned to any particular
terminal and the location of vehicles away from the home
domicile depended exclusively upon business.  In contrast,
the facts of the present situation are that a certain number
of trailers is assigned to Smith County at all times and
would remain there even when they were not in use.

The Court concluded, in the Roscoe case, that the facts
fell squarely within the holdings of the cases of Fort Worth
v. Southland Greyhound Lines, Inc., supra, and Gulf, C and S.F.
Railway Co. v. Dallas 6 S.W.2d 292, (Tex.Com.App. 1929) and
the terms of Article 7153, Vernon's Civil Statutes, and that
the properties were only temporarily removed from the city of the
principal office or place of domicile.  Our trailers are not
temporarily removed from Dallas County, but as the facts indicate
are permanently assigned to Smith County.

As the Court very ably stated in the <u>Overton</u> case, supra:

"A careful examination of these authorities clearly reveals distinguishing features. . . . In the Southland Greyhound and Chemical Express cases, the City was attempting to tax motor vehicles that were only temporarily being kept within its limits. The courts correctly held that such property having failed to acquire 'permanent' location apart from its owner, had its tax situs at the owner's domicile."

A final exception to the common law rule of "mobilia sequuntur personam" which must be considered is the establishment of a situs for taxation purposes by legislative enactment. There is no specific legislation determining the taxable situs of trailers as there is for the rolling stock of a railroad company. Article 7168, Vernon's Civil Statutes.  In fact, the holding of the case of <u>Gulf, C and S.F. Railroad v. Dallas</u>, supra, is distinguishable because there is specific legislation establishing the tax situs of all rolling stock of a railroad at its home office in Texas or place of domicile.

Article 7153, Vernon's Civil Statutes, is also relevant to the taxable situs of personal property.  It states that:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the state or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated.  Acts 1897, p. 2031 G.L. Vol. 10, p. 125 7."

The Texas Courts have held that the meaning of "where it is situated" is the same as "where situated" in Article VIII, Section 11, of the Texas Constitution.  <u>Fort Worth v. Southland Greyhound</u>, supra; <u>Gulf C. & S.F. Railway Co. v. Dallas</u>, supra; <u>Great Southern Life Ins. Co. v. Austin</u>, supra; and <u>Galveston v. Haden</u>, supra.  This statute does not provide for any exception to the "mobilia sequuntur personam" rule or its exceptions.

As there is a taxable nexus between a certain number of trailers assigned to Smith County and that certain number is actually sent to Smith County for legitimate business purposes, then that number of trailers have attained an actual business situs in Smith County and, therefore, under the recognized exceptions to the "mobilia sequuntur personam" rule, are taxable in Smith County.

## S U M M A R Y

Under the stated facts, the situs of a certain number of U-Haul trailers, for the purpose of ad valorem taxation, is Smith County, Texas, the actual business situs of the trailers.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

Harry Gee, Jr.
Assistant Attorney General

HG,Jr.:sjl

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Paul Phy
W. O. Shultz
Ben Harrison
Stanton Stone

APPROVED FOR THE ATTORNEY GENERAL
BY: HAWTHORNE PHILLIPS